## United States District Court
## District of Massachusetts

```
_____
                                 )
KAREN M. SHEA,                   )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     Civil Action No.
                                 )     16-11488-NMG
DITECH FINANCIAL LLC and         )
WILMINGTON SAVNINGS FUND         )
SOCIETY, FSB, DBA CHRISTIANA     )
TRUAST,                          )
                                 )
          Defendants.            )
_____)
```

### MEMORANDUM & ORDER

GORTON, J.

Plaintiff Karen M. Shea ("Shea") brought this action against Ditech Financial LLC ("Ditech"), a former assignee of a mortgage granting a security interest in Shea's residence, and Wilmington Savings Fund Society, FSB DBA Christina Trust ("Wilmington"), the current assignee of that mortgage.  Pending before the Court is plaintiff's motion for a preliminary injunction to restrain defendants from conducting a scheduled foreclosure sale on the residence.  For the reasons that follow, the motion for a preliminary injunction will be denied.

I.   **Background and Procedural History**

In October, 1996, Shea and then-husband Patrick Shea took title to property located at 145 Jericho Road, Scituate,

-1-

Massachusetts ("the Property").  In March, 2006, Plaintiff and her husband refinanced their mortgage with a $400,000 loan from Mt. Washington Cooperative Bank.  The mortgage was assigned to the Mortgage Electronic Registration System ("MERS") the same day.  In December, 2008, MERS reassigned the mortgage to Countrywide Home Loans Servicing LP ("Countrywide").  Countrywide was later succeeded by BAC Home Loans Servicing, LP ("BAC").

In 2009, Shea began experiencing difficulty making payments on the loan and contacted BAC but was told that she would not be offered assistance until she was at least two months in arrears on her payments.  Shea later fell behind in her payments and BAC commenced foreclosure proceedings.  On July 19, 2009 BAC entered into a Forbearance Agreement with Shea under the Fannie Mae Homesaver Program.  Under the terms of the Forbearance Agreement, Shea was required to make monthly payments in the amount of $1,661.31, exactly half of her prescribed monthly payment, for six months commencing on July 19, 2009 and ending on January 1, 2010.

According to Shea, she made each of the payments required under the Forbearance Agreement on time.  At the end of the six-month agreement period, she claims, she was instructed by BAC to continue making monthly payments in the amount agreed to under the Forbearance Agreement.  Although Shea purportedly continued

to make payments, on May 14, 2010, BAC sent Shea a Notice of Intention to Foreclose which gave her 30 days to cure an alleged default of nearly $80,000. Shea continued to make payments through July 20, 2010, but thereafter BAC stopped accepting her payments. She has made no further mortgage payments since then.

Shea and her husband conveyed a deed for the Property to Shea on December 15, 2010 pursuant to a divorce agreement. On February 3, 2014 Countrywide assigned the mortgage to Green Tree Servicing, LLC ("Green Tree"), which changed its name to Ditech Financial LLC in August, 2015.

On April 28, 2016 plaintiff commenced this action by filing a complaint in the Massachusetts Superior Court for Plymouth County. Defendant removed the action to federal court on July 18, 2016 and, one week later, filed a motion to dismiss the complaint which is currently pending. On July 27, 2016 Ditech sent Shea a Notice of Mortgagee's Sale of Real Estate stating that the Property would be sold at foreclosure auction on August 26, 2016. Two days later, Ditech assigned Shea's mortgage to Wilmington. On August 11, 2016, after receiving the Notice of Mortgagee's Sale of Real Estate, plaintiff filed the motion for a preliminary injunction which is currently before the Court. The Court allowed plaintiff's motion to amend her complaint to add Wilmington as a party on August 17, 2016.

That same day, the Court held a hearing on the motion for a preliminary injunction after which it announced that it would hold the motion in abeyance until September 21, 2016.  The Court instructed Wilmington to postpone the foreclosure sale until after that date and to use the intervening time to attempt to resolve the dispute.  Because the parties have failed to do so, the Court will proceed to decide the motion on the merits.

## IV.   Plaintiff's Motion for a Preliminary Injunction

Plaintiff moves the Court for a preliminary injunction restraining Wilmington from conducting a mortgage foreclosure sale and from otherwise enforcing the Power of Sale contained in the mortgage agreement.

### A.   Legal Standard

In order to obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec.

-4-

Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)).  The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).  Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

   **B.  Application**

      **1. Likelihood of Success**

   Plaintiff's complaint alleges five counts based on different causes of action, and plaintiff does not specify upon which grounds she moves for a preliminary injunction.  Because Counts III and IV allege that Ditech and Wilmington inflicted emotional distress on Shea and Count V alleges a breach of M.G.L. ch. 93A based on Ditech's failure to provide a sufficient response to a demand letter, none of those counts could serve as a basis for an injunction restraining Wilmington from proceeding with the foreclosure.  Consequently, the Court's analysis will focus on Counts I and II.

### a. Count I

In Count I Shea alleges that BAC breached Section A of the Forbearance Agreement by commencing foreclosure on the Property on May 14, 2010 despite the fact that plaintiff had continued to submit timely payments pursuant to her agreement with BAC to extend the Forbearance Agreement.   Section A of the Forbearance Agreement states, in relevant part:

> **Foreclosure Activity.**   The Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Agreement.   If this Agreement terminates, however, then any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended.

Accordingly, if the Forbearance Agreement had been extended, BAC did not have the right to proceed with foreclosure as long as Shea continued to make timely payments.   Shea claims that because Wilmington is the assignee of all rights from its predecessor-in-interest, BAC, it is liable for BAC's breach of the Forbearance Agreement.   In response, Wilmington asserts that it is not bound by the Forbearance Agreement because it is not a party to that agreement.   See City of Revere v. Boston/Logan Airport Associates, LLC, 416 F. Supp. 2d 200, 208 (D. Mass. 2005).

Defendant further rejoins that the agreement does not contain any specific language manifesting an intent to bind successors in interest or assignees of the parties and, even if

it did, BAC did not have the legal authority to bind its
assignees to a contract to which they were not parties.
<u>Milwaukee Center for Independence, Inc.</u> v. <u>Milwaukee Health
Care, LLC</u>, No. 15-c-1479, 2016 WL 3212087, at *3 (E.D. Wis. June
9, 2016).  Moreover, defendant avers, Wilmington did not
expressly or impliedly assume the Forbearance Agreement and
therefore cannot be bound by it. <u>City of Revere</u>, 416 F. Supp. 2d
at 208 (citing <u>John Wiley & Sons, Inc.</u> v. <u>Livingston</u>, 376 U.S.
543, 550 (1964)).  Wilmington notes that the Forbearance
Agreement was never recorded so that it had neither constructive
nor actual notice of its existence.

Plaintiff responds that Wilmington became liable to
plaintiff for the breach of the Forbearance Agreement when it
was assigned the mortgage.  Shea notes that the assignment
document specifies that the assignment is subject to the terms
and conditions of the mortgage and that there is no language in
the mortgage limiting the liability of a successor-in-interest.
Accordingly, Shea argues, Wilmington expressly assumed BAC's
obligations related to the mortgage.

Plaintiff's argument appears to be based upon the
assumption that the Forbearance Agreement amended the mortgage
agreement between Shea and BAC such that Wilmington's assumption
of the mortgage was subject to the terms of the Forbearance

Agreement as well as those of the mortgage itself.  Notably,
however, Section D of the Forbearance Agreement states:

> **No Modification.  I understand that the Agreement is
> not a forgiveness of payments on my Loan or a
> modification of the Loan Documents.**  I further
> understand and agree that the Servicer is not
> obligated or bound to make any modification of the
> Loan Documents or provide any other alternative
> resolution of my default under the Loan Documents.

The "Loan Documents" are defined as the mortgage and note.
The terms of the Forbearance Agreement, therefore, contradict
Shea's implicit argument that the agreement was incorporated
into the mortgage.  Accordingly, while BAC may be liable to Shea
for its breach of the Forbearance Agreement, Wilmington has not
assumed that liability.

### b. Count II

Count II alleges that BAC breached the requirements of
M.G.L. ch. 244 § 35A by providing plaintiff only 30 days to cure
her default in its Notice of Intent to Foreclose dated May 14,
2010, rather than the 90 days required by the statute.  This
claim is not dependent upon the Forbearance Agreement and
therefore BAC's liability would have been assumed by Wilmington
when it was assigned the mortgage.

Wilmington notes, however, that BAC never actually
foreclosed on the mortgage, thereby obviating the effect of the
subject statute.  Shea has, therefore, had ample time to cure
her default since BAC's original notice of its intent to

foreclose.  Furthermore, Wilmington contends that Ditech

complied with all statutory notice requirements when it

scheduled the impending foreclosure sale.  Accordingly, Shea has

also failed to demonstrate a reasonable likelihood of success on

the merits of this claim.

### 2. Other Factors

Although the other prerequisites for injunctive relief

favor the plaintiff, they do not overcome her unlikelihood of

success.  Shea certainly may be subject to irreparable harm if

her house is foreclosed upon, especially given that she is the

primary caretaker for her disabled sister who suffers from

Cerebral Palsy and also resides at the Property.  Furthermore,

the balance of hardships tips in her favor because she will be

subject to greater hardship upon the denial of a preliminary

injunction than defendants would be upon its allowance.

Nevertheless, plaintiff is not entitled to injunctive

relief because "[l]ikelihood of success on the merits is the

critical factor in the analysis." Sankey v. Aurora Loan Servs.,

LLC, 757 F. Supp. 2d 57, 59 (D. Mass. 2010). See also Tuxworth

v. Froehlke, 449 F.2d 763, 764 (1st Cir. 1971)("No preliminary

injunction should be granted in any case unless there appears to

be a reasonable possibility of success on the merits."); Weaver

v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)("In the ordinary

course, plaintiffs who are unable to convince the trial court

that they will probably succeed on the merits will not obtain interim injunctive relief."). Accordingly, the Court will deny plaintiff's motion for injunctive relief.

### ORDER

In accordance with the foregoing, plaintiff's motion for a preliminary injunction (Docket No. 12) is **DENIED**.


**So ordered.**


/s/ Nathaniel M. Gorton _____
Nathaniel M. Gorton
United States District Judge

Dated September 22, 2016